IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JAMES W. WHALEY,

          Plaintiff,

v.                                      CIVIL  ACTION  NO.  3:03-2494

R.L. BROWNLEE, Acting Secretary,
Department of the Army, Agency,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant R.L. Brownlee's Motion for Summary Judgment on Plaintiff James W. Whaley's claim of age discrimination. Plaintiff opposes the motion. For the following reasons, the Court agrees with Defendant and **GRANTS** the Motion for Summary Judgment.

**I.
FACTS**

The facts of this case are largely not in dispute. In 1981, Plaintiff began working for Defendant at the Huntington District Corps of Engineers in the Real Estate Division, Appraisal Branch. Within two years, Plaintiff was promoted from an Appraiser at the GS-11 level to a GS-12 level. The Appraisal Branch of the Division has never employed more than five or six employees at one time, which includes two or three appraisers.

In approximately 1992, the Lead Appraiser retired and the position became open. Plaintiff, along with other candidates, rotated as Acting Chief for approximately two years until the

position was posted in 1994. Plaintiff applied for the position but was not selected. In January of 2002, the position again became vacant when the individual selected in 1994 retired. Defendant posted the vacancy in June of 2002. Plaintiff applied for the position, but the job announcement was withdrawn approximately two weeks later because of poor draftsmanship. The job was then reposted and Plaintiff reapplied.

The selection committee for the position was comprised of three individuals: William Graham, as Chief of Real Estate Division; Paul Klote, Chief, Appraisal Branch in the Great Lakes and Ohio River Division; and Jim Twohig, Assistant Chief, Programs and Project Management Division, Huntington Division. In addition to Plaintiff, there were three other individuals who applied for the position. The selection committee was responsible for comparing the applicants to the criteria set forth in the "KSAs" for the position, which stands for "knowledge, skills, and abilities." The KSAs for the Lead Appraiser position, which were included in the job posting, included:

> KSA 1: Knowledge of applicable Federal and State real estate appraisal standards, guidelines, procedures, and regulations and real estate law and practices, including the Uniform Standards of Professional Practice (USPAP) and the Uniform Appraisal Standards for Federal Land Acquisitions, sufficient to personally perform complex appraisals and review appraisals prepared by staff and contract appraisers.
>
> KSA 2: Ability to evaluate real estate market conditions, analyze facts, and solve problems relating to real estate appraisals and related portions of project reports as an appraiser or reviewing appraiser.
>
> KSA 3: Knowledge of real estate practices and procedures associated with the planning, development, acquisition, appraisal, management, and disposal of complex projects.

> KSA 4: Ability to communicate effectively, orally and in writing.
>
> KSA 5: Ability to plan, organize, and manage a functional program within allocated resources and established deadlines.

*The Department of the Army – Job Opportunity Announcement*, at 2. The candidates were rated for each KSA based upon "+" for outstanding, "o" for fully successful, and "-" as minimally satisfactory. Mr. Graham described the selection process as follows:

> Well, we had four candidates. We received their resumes. We all took their resumes and compared them with the KSAs, the selection criteria. We came to the interviews armed with that knowledge. We conducted the interviews. We independently rated each of the candidates based on the selection criteria and the standards set out in the selection criteria, both based on their performance in the interview and their written resumes. And we discussed, then we made a first cut and saw there were clearly Jim [Plaintiff] and Chris [Borton] were at the top. So, we no longer considered the other two in our deliberations. And we went through and we talked about our ratings on each of the individual candidates based on their submissions and with respect to the selection criteria, and tallied up our ratings and put them up on the board and added them up and made our selection.

*Deposition of William Graham*, at 14 (Nov. 23, 2004). At the conclusion of this process, the committee recommended that Chris Borton be hired over Plaintiff. It is not disputed that at the time of the selection, Mr. Borton was under the age of forty while Plaintiff was over the age of forty.

The matrix of the evaluations for Mr. Borton, designated as "CB," and Plaintiff, designated as "J," appeared as follows:

| KSA | CB | J |
|---|---|---|
| 1 | ooo | +++ |
| 2 | +o+ | +++ |
| 3 | +++ | ooo |
| 4 | +++ | ++o |
| 5 | <u>+o+</u> | <u>ooo</u> |
| TOTALS | +10 | +8 |

The order in which the ratings were recorded were Mr. Twohig, Mr. Klote, and Mr. Graham. On September 9, 2002, Mr. Graham informed Plaintiff that Mr. Borton, rather than Plaintiff, had been selected for the position. Plaintiff testified at his deposition that he was "devastated" by the news and he was shocked that Mr. Borton was selected because he only had worked for the Corps for two or three years. *Deposition of James W. Whaley*, at 54-55 (Nov. 10, 2004).

On September 23, 2002, Plaintiff wrote Mr. Graham a letter requesting clarification of the selection process. Subsequently, Plaintiff met with Mr. Graham to discuss the issue. Following the discussion, Plaintiff was unsatisfied with Mr. Borton's selection, and he contacted the Huntington Corps of Engineers Equal Employment Opportunity (EEO) office on October 1, 2002. The procedural history of this case from October 1, 2002, until this case was filed on December 22, 2003, is fully described in the Court's prior Order entered on October 18, 2004. The issue now before the Court is whether Plaintiff's claim of age discrimination can survive summary judgment.

## II.
## STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, to obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. In the context of a discrimination case, "[a]n employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995) (citations omitted).

## III.
## DISCUSSION

In a federal discrimination suit based on age brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*,[1] a plaintiff may either establish age discrimination "through evidence showing that age bias motivated the employment decision under the so-called 'mixed-motive' method; and second, through circumstantial evidence of discrimination under the 'pretext' method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973) and its progeny." *Mereish v. Walker*, 359 F.3d 330, 334 (4th Cir. 2004) (citation omitted).[2] Under the *McDonnell Douglas* scheme, a plaintiff must first establish a prima facie case of employment discrimination. To establish a prima facie case, the plaintiff must adduce evidence that: (1) he belongs to a protected class; (2) he applied for an available position; (3) he was qualified for the position; and (4) he was rejected for the position and the position remained open or was filled by a similarly qualified applicant outside of the protected class. *See McDonnell Douglas*, 411 U.S. at 802; *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).[3] If the plaintiff

---

[1]*See* 29 U.S.C. § 633a (providing, "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be free from any discrimination based on age").

[2]In his Response to Defendant's Motion for Summary Judgment, Plaintiff only argues that summary judgment is inappropriate under the *McDonnell Douglas* burden-shifting paradigm. Although Plaintiff makes no arguments under the mixed-motive theory, even if he had, as will be discussed herein, there is simply no direct or circumstantial evidence to support Plaintiff's claim of age discrimination.

[3]The courts have developed variants of the *McDonnell Douglas* prima facie case for use in different employment contexts. *See Duke v. Uniroyal Inc.*, 928 F.2d 1413, 1417 (4th Cir. 1991) (stating that different factual situations may require different adaptations of *McDonnell Douglas* analysis).

establishes a prima facie case, it "in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.

The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory explanation which would support the conclusion that an improper discriminatory motive was not a determining factor in the challenged employment decision. *Id.* "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (citation and footnote omitted). If the employer is able to do so, the presumption created by the prima facie case is neutralized, and the burden shifts back to the plaintiff to show that the employer's stated reason was merely a pretext for discrimination. The plaintiff bears the ultimate burden of proving intentional discrimination. *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 143 (2000) (citations omitted).[4] As the Fourth Circuit explained in *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277 (4th Cir. 1994):

> Assuming the employer meets this burden of production, "the *McDonnell Douglas* framework–with its presumptions and burdens--disappear[s], and the sole remaining issue [is] discrimination *vel non*." In other words, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons "were not its true reasons, but were a pretext for discrimination." At this point, the burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional

---

[4] In *Reeves*, the United States Supreme Court explained that in some cases "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."*Id*. at 148.

>> discrimination."  Thus, the *McDonnell Douglas* framework "serves to bring the litigants and the court expeditiously and fairly to this ultimate question."

354 F.3d at 285 (internal citations omitted).

For purposes of its motion, Defendant assumes that Plaintiff can establish a prima facie case, and the Court agrees that the evidence would support such a finding.  However, the Court finds that Defendant has offered a legitimate non-discriminatory reason for selecting Mr. Borton as it is undisputed that he scored higher on the KSAs than did Plaintiff.  Therefore, the burden shifts back to Plaintiff to demonstrate that this reason is mere pretext for age discrimination.

In support of his claim, Plaintiff contends that Defendant placed more emphasis on management experience than was necessary for the position and that, in any event, he had enough management experience that it should not have prevented him from getting the position.  Plaintiff states that this illogical emphasis on managerial experience is sufficient to support an inference that the real reason for his non-selection was because of age discrimination. Specifically, Plaintiff argues that the Appraisal Branch of the Huntington Division only had a few people on staff and did not need a significant degree of management.  Nevertheless, Plaintiff states that he had the necessary management experience because he previously had rotated into the position of Acting Chief Appraiser for a period of nine months and, early in his career, he had served as a Chief Appraiser for two years for the Department of Highways in Tennessee and he served as a Sergeant in the Army while serving in Vietnam.

In support of his position that management experience was the deciding factor in selecting Mr. Borton, Plaintiff points to the following deposition exchange between Plaintiff's counsel and Steven B. Schideler, Executive Officer of the Huntington District and Chief of Real Estate Division:

> Q. As time went along, then after Mr. Borton's selection, did you come to learn any more facts or details concerning the basis for his selection?
>
> A. I can't recall of any specific discussions related to the basis of the decision. Bill and I, you know, had, all along, talked about management versus technical skills. And I guess that's the limit of my knowledge of the basis of that selection.
>
> \*   \*   \*
>
> Q. (By Mr. Palmer) As any discussions related to management skills versus technical skills, do you recall any particulars of any discussion as those qualifications related to Mr. Whaley?
>
> A. Yes. We felt that – conversations had been that Jim was a very strong technically but had limited management experience.
>
> Q. Did you, yourself, hold the opinion that Him had limited management experience?
>
> A. Yes.
>
> Q. What was your knowledge as to any management experience he had?
>
> A. It was just based on my work with Jim over the years.

> Q. Did you know that he had been acting chief for – well, it wasn't a year but close to a one year period of time in 2002?
>
> A. It was, I think, ended up 120 days at the GS-13 level, and then until the selection was made – yes, I was.
>
> Q. Did you have occasion to observe him in the position of acting chief during that time?
>
> A. Yes.
>
> Q. And what was your assessment of his job performance in the position of acting chief during that time?
>
> A. Well, during that time period – or during that year, which included this period that he was acting chief, I was his rater on his performance and rated him very high during that period. On the other hand of that, that was essentially a one-person office. So, as far as management, it was limited to management of work as opposed to management of staff. The other appraiser at the GS-12 level had passed away in January of that year, and Jim did a very good job keeping the work flowing. But as far as being able to demonstrate staff managements, that wasn't really a possible during that time, because essentially he was a one-person office.

*Deposition of Steven B. Schideler*, at 10-13.[5]  Plaintiff concedes he has no direct evidence of age discrimination, but he asserts that this deposition exchange evidences that management experience was a primary factor in the decision making process and that such proffered reason is mere pretext. However, the Court fails to see how this exchange supports a claim of pretext for age discrimination.

---

[5]The Court was not provided a copy of this deposition, but for purposes of this motion the Court will assume that Plaintiff has accurately quoted the deposition in his brief.

First, Mr. Schideler was not a member of the selection committee who ranked Mr. Borton and Plaintiff, and Mr. Schideler acknowledged that his discussions about the basis of the decision were limited to his discussions with Mr. Graham about Plaintiff's management skills versus technical skills. It appears from Mr. Schideler's deposition there was an agreement that Plaintiff had strong technical skills, but he had limited management experience. No one has ever denied that Plaintiff has had some management experience but, as explained by Mr. Schideler, Plaintiff's management experience with the Corps was limited by the fact he basically was in a one-person office at the time he was Acting Chief. Moreover, in evaluating Plaintiff, all three members of the selection committee, rated Plaintiff as being "fully successful" at the KSA 5 level, which included his "[a]bility to plan, organize, and manage a functional program within allocated resources and established deadlines."[6] Thus, the selection committee did not find that Plaintiff lacked successful experience at this level and in his managerial abilities. The difference between Plaintiff and Mr. Borton was that two of the committee members found that Mr. Borton was "outstanding" at this level.

Although Plaintiff essentially contends the fact he ranked lower than Mr. Borton with respect to management abilities should not have prevented him from getting the position over Mr. Borton, in discussing the importance of the managerial aspects of the job, Mr. Graham and Plaintiff's counsel engaged in the following exchange:

---

[6]The committee also ranked Plaintiff as "fully successful" at the KSA 3 level which had a management component with respect to "[k]nowledge of real estate practices and procedures associated with the planning, development, acquisition, appraisal, management, and disposal of complex projects." KSA 3.

> Q. (By Mr. Palmer) Mr. Graham, is it true that the chief appraiser position is a GS-13 more so for technical aspects of the job rather than managerial aspects of the job?
>
> A. The rating is based on the technical aspect. The GS-13 rating is supported by the technical aspects of the job. It's not any less a managerial job because of that, but there are two ways you can support the job grade, one is through the managerial aspects and one is through the technical aspects.
>
> Q. And in this instance, it's technical?
>
> A. Yes. But that makes it no less managerial.

*Deposition of William Graham*, at 36-37. Clearly, management experience was a legitimate non-discriminatory factor that the selection committee considered as part of the responsibilities of the job. In addition, it was part of the criteria that was included in the job posting. Thus, applicants should have known in advance that management was a factor which would be considered in filling the position. Moreover, there is no evidence that any of the KSAs were given more weight than the other KSAs. It is obvious that each KSA was given equal weight and each applicant was scored according to that criteria. Although Plaintiff may believe that management abilities should have been given less weight than the other criteria, he has not set forth any evidence upon which a jury could reasonably infer that a management factor was mere pretext for age discrimination.[7] This Court's job is not to second-guess the soundness of the selection criteria. Rather, it is to determine whether the decision was based upon age. *See, e.g., Mereish*, 359 F.3d at 339 (providing in a reduction in force case that the soundness of what positions to eliminate are not the concern of the

---

[7]In addition, Plaintiff has offered no evidence that Mr. Borton was not more qualified than Plaintiff with respect to management experience.

courts. Instead, it is whether the decision-makers were motivated by a discriminatory animus). As Plaintiff has presented no such evidence in this case, the Court finds Plaintiff has failed to meet his burden under the *McDonnell Douglas* and Defendant is entitled to judgment as a matter of law.

### IV.
### CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DIRECTS** the Clerk to dismiss this action from the docket of the Court.[8]

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:   April 10, 2006

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8]In its motion, Defendant also requests that the Court deny Plaintiff's demands for compensatory and punitive damages and his request for a jury trial. As the Court has granted Defendant summary judgment on the merits of the case, these requests need not be addressed because they are moot.